UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MONTBLANC-SIMPLO GMBH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:17-cv-415 |
| | ) | |
| MIROSLAV ILNITSKIY, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. 39). After a representative for Defendant failed to respond to Plaintiff's Motion or to appear at the hearing on December 22, 2017, the undersigned U.S. Magistrate Judge took the matter under advisement.[1] For the reasons stated below, the undersigned now recommends that Plaintiff's Motion for Default Judgment be GRANTED.

### I. INTRODUCTION

#### A. Background

On April 6, 2017, Montblanc-Simplo GmbH ("Plaintiff") filed this lawsuit, and subsequently, on September 7, 2017, added Miroslav Ilnitskiy ("Defendant") as a defendant in its First

---

1. Relevant filings before the Court include the First Amended Verified Complaint (Dkt. 24) ("Am. Compl."), Plaintiff's Request for Clerk's Entry of Default (Dkt. 36) ("Pl.'s Req. Default"); the Declaration of David E. Weslow in Support of Request for Clerk's Entry of Default (Dkt. 36-1) ("Weslow Decl."); Plaintiff's Motion for Default Judgment (Dkt. 39) ("Mot. Default J."), the Proposed Order attached to Plaintiff's Motion for Default Judgment (Dkt. 39-1) ("Prop. Order"); Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Entry of Default Judgment (Dkt. 41) ("Mem. Supp. Default J."), and all attachments and exhibits submitted with those filings.

Amended Verified Complaint (Dkt. 24). Plaintiff's suit against Defendant involves allegations of trademark infringement and trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1), and copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501. (Am. Compl. ¶¶ 10, 79, 85, 96.)[2] Plaintiff alleges that Defendant has improperly used Plaintiff's trademarks and copyrighted works without permission to promote and sell counterfeit products on the Internet. (Mem. Supp. Default J. at 1.) Plaintiff now seeks default judgment against Defendant and requests permanent injunctive relief and statutory damages. (Id. at 1-2.)

## B. Jurisdiction and Venue

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action involves federal questions arising under the Lanham Act and the Copyright Act, which are federal laws relating to trademarks and copyrights. (Am. Compl. ¶¶ 10-11.)

This Court has personal jurisdiction over Defendant pursuant to the Virginia Long-Arm Statute, VA. CODE § 8.01-328.1. For personal jurisdiction over a defendant, the standards of both federal due process and the forum state's long-arm statute

---

2. Plaintiff had also previously brought in rem cybersquatting actions against various Internet domain names alleging violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), but Plaintiff has since voluntarily dismissed those claims against the Internet domain names. (Mem. Supp. Default J. at 8.)

and must be satisfied. See Tire Eng'g & Distrib., LLC v.
Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012).
Federal due process permits personal jurisdiction where a
defendant has "certain minimum contacts with [the forum state]
such that the maintenance of the suit does not offend
'traditional notions of fair play and substantial justice.'"
Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting
Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Virginia Long-
Arm Statute "extends the jurisdiction of its courts as far as
federal due process permits." ePlus Tech., Inc. v. Aboud, 313
F.3d 166, 176 (4th Cir. 2002). With federal due process and the
Virginia Long-Arm Statute requiring the same standards,
essentially only one personal jurisdiction inquiry is required.
See id.

Personal jurisdiction can exist over a nonresident
defendant based on that defendant's Internet contacts with the
forum. A state may exercise personal jurisdiction over a
nonresident defendant when that defendant "(1) directs
electronic activity into the State, (2) with the manifested
intent of engaging in business or other interactions within the
State, and (3) that activity creates, in a person within the
State, a potential cause of action cognizable in the State's
courts." ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293
F.3d 707, 714 (4th Cir. 2002). However, a state may not exercise

3

personal jurisdiction over a nonresident defendant when that defendant engages in "passive Internet activity" such as "simply plac[ing] information on the Internet." Id.

Though Defendant is not a resident of Virginia, Virginia may exercise personal jurisdiction over Defendant based on Defendant's Internet contacts. Defendant set up an interactive e-commerce website and social media accounts accessible to Virginia residents. (Am. Compl. ¶ 51.) Defendant used his websites and accounts to individually communicate with, receive payment from, and ship counterfeit products to at least one customer in Virginia. (Id. ¶¶ 53-54.) Therefore, Defendant directed electronic activity into Virginia with the intent to engage in business and other interactions, and such activity created potential causes of action.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims against Defendant occurred in this District. (Id. ¶ 16.)

## C. Service of Process

Service of process has been proper in this action. Federal Rule of Civil Procedure 4(f)(3) allows service on individuals in a foreign country "by other means not prohibited by international agreement, as the court orders." However, any court-ordered method of service of process allowed by Rule

4

4(f)(3) must still comply with constitutional due process, meaning that a court "must approve a method of service that is 'reasonably calculated' to give notice to defendant." BP Prods. N. Am., Inc. v. Dagra, 232 F.R.D. 263, 264 (E.D. Va. 2005) (citation omitted). Service of process through electronic and online communications, such as email and social networking messages, generally satisfy constitutional due process. See WhosHere, Inc. v. Orun, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3 (Feb. 20, 2014).

On September 26, 2017, Plaintiff filed its Motion for Service by Publication and Email (Dkt. 27). On September 27, 2017, the Court granted Plaintiff's Motion through an Order (Dkt. 30) (the "September 27th Order"), which required Plaintiff to complete service of process by publishing the Court's September 27th Order in The Washington Post or The Washington Times within fourteen days and by sending the September 27th Order to Defendant's eight previously used email addresses. The Court determined then, and reaffirms now, that such service of process was reasonably calculated to give notice to Defendant. Plaintiff complied by emailing copies of the September 27th Order to Defendant's email addresses on October 3, 2017, and by publishing a copy of the September 27th Order in The Washington

Times on October 5, 2017. (Weslow Decl. ¶¶ 6, 8.)[3] Through its compliance with the court-ordered method of service of process that was reasonably calculated to give notice to Defendant, Plaintiff properly completed service of process for this action.

### D. Grounds for Default Judgment

To date, Defendant has not appeared or otherwise participated in these proceedings. The Court's September 27th Order, which was sent to Defendant's eight email addresses and published in The Washington Times, stated that Defendant was to answer or respond to the lawsuit within twenty-one days after publication of the September 27th Order, and "[i]f no appearance or pleading is filed as required by this Order, this Court may render a judgment against Defendant." The September 27th Order was published in The Washington Times on October 5, 2017, and no party responded on behalf of Defendant within twenty-one days, despite instruction to do so by the Court.

On November 15, 2017, Plaintiff filed its Request for Clerk's Entry of Default (Dkt. 36), seeking an entry of default for Defendant. On November 16, 2017, the Clerk of the Court issued the Entry of Default (Dkt. 37) for Defendant. On December

---

3. While not necessary to affirm that a court-ordered method service of process was reasonably calculated to give notice to a defendant, Defendant did, in fact, gain actual knowledge of the action against him. On October 3, 2017, Defendant responded to the Plaintiff's emailing of the September 27th Order through one of his email accounts. (Weslow Decl. ¶ 7.) Plaintiff then submitted copies of the First Verified Amended Complaint translated into Ukrainian to Defendant's eight email addresses. (Id. ¶ 9.) Defendant again responded to Plaintiff's emails through one of his email accounts. (Id. ¶ 10.)

1, 2017, Plaintiff filed its Motion for Default Judgment. The undersigned then held a hearing on Plaintiff's Motion on December 22, 2017, at which no representative for Defendant appeared. Finding the matter uncontested, the undersigned took the matter under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that Plaintiff has established the following facts.

Plaintiff Montblanc-Simplo GmbH is a German corporation headquartered in Hamburg, Germany. (Am. Compl. ¶ 5.) Plaintiff is in the business of manufacturing, designing, branding, and selling sophisticated, high-quality products ("Montblanc Products") such as writing instruments, writing accessories, watches, leather goods and belts, jewelry, and eyewear. (Id. ¶¶ 2, 18.) Defendant Miroslav Ilnitskiy is an individual who has used various email addresses, websites, and social media accounts to promote and sell counterfeit Montblanc Products with the intent to profit from such promotion and sale. (Id. ¶¶ 9, 51, 68.)

Plaintiff has manufactured, designed, and sold Montblanc Products since 1906, with its initial product being high-quality writing instruments. (Id. ¶ 18.) Plaintiff promotes Montblanc

7

Products and its other services using formative marks including the word "Montblanc" and various other designs ("Montblanc Marks"). Montblanc Marks are famous and distinctive through the United States and the world. (Id. ¶ 23.) Plaintiff's Montblanc Products and their packaging display Montblanc Marks. (Id. ¶ 20.) Plaintiff also operates an Internet website through the domain name <montblanc.com>, through which it sells and advertises its Montblanc Products and displays Montblanc Marks. (Id. ¶¶ 19-20.) Plaintiff has common law rights in Montblanc Marks and has registered various Montblanc Marks as trademarks around the world, such as word marks and design marks, including registration with the Principal Trademark Register of the U.S. Patent and Trademark Office. (Id. ¶¶ 22, 24-27, Scheds. B-C.) Plaintiff also has copyrighted various original images and expressions ("Montblanc Works") for use in advertising Montblanc Products. (Id. ¶¶ 88, 90, Sched. D.) Plaintiff displays Montblanc Works on their website <montblanc.com> and in other advertising. (Id. ¶ 89.) In 2010 alone, Plaintiff's brand generated more than $780 million in total sales revenue worldwide. (Id. ¶ 21.)

On August 17, 2015, using an alias, Defendant registered the domain name <montblancua.com> through a domain name registrar. (Id. ¶ 30.) After registration, <montblancua.com> was configured to replicate Plaintiff's genuine <montblanc.com>

website, and <montblancua.com> displayed Montblanc Marks and
Montblanc Works and promoted counterfeit Montblanc Products for
sale. (Id. ¶¶ 31-32.) The email addresses <mbformens@gmail.com>,
<miroslav.ilnitskiy@gmail.com>, <ilnitskiy.miroslav@gmail.com>,
and <miroshandmade@gmail.com> (the "Subject Email Addresses")
were associated with the sale of counterfeit products through
<montblancua.com> and were accessed primarily from IP addresses
in Ukraine. (Id. ¶¶ 34-35.) The email address <ilyas@ukr.net>
was also associated with the Subject Email Addresses. (Id. ¶
34.) Plaintiff's investigator purchased counterfeit products
from <montblancua.com> and paid for the counterfeit products
through a Paypal account associated with the email address
<miroslav.itnitskiy@gmail.com>. (Id. ¶¶ 33, 36.) On around
August 17, 2016, approximately one month after Plaintiff's
investigator purchased the counterfeit products,
<montblancua.com> was disabled.

Between November 6, 2016 and December 6, 2016, Defendant
registered the domain names <montblancpensoutletcheapsale.com>,
<montblancpensoutletcheap.com>, and
<montblancpensoutletcheaponsale.com> (the "Subject Domain
Names"), using a privacy service that concealed his identity.
(Id. ¶¶ 38, 41.) After registration, the Subject Domain Names
were configured to replicate Plaintiff's genuine <montblanc.com>
website, and the Subject Domain Names displayed replicas of

Montblanc Marks and Montblanc Works and promoted counterfeit
Montblanc Products for sale. (Id. ¶¶ 39-40, 42-43.) Defendant
also used a webpage on the third-party webhosting platform
<vk.com> (the "Vk.com Webpage") to display replicas of Montblanc
Marks and Montblanc Works and promote counterfeit Montblanc
Products for sale. (Id. ¶¶ 49-50.)

Defendant operated nine Instagram accounts with the
following usernames: m7_montblanc, zekta_montblanc,
adaam.fmontblanc, ladon_montblanc, filidam_montblanc,
light_montblanc, dimoncheg_montblanc, mjt_montblanc, and
amira_montblanc (the "Subject Instagram Accounts"). (Id. ¶¶ 44-
45.) The Subject Instagram Accounts displayed replicas of
Montblanc Marks and Montblanc Works and promoted counterfeit
Montblanc Products for sale. (Id. ¶¶ 44, 47-48.) The Subject
Instagram Accounts were associated with free email accounts from
Internet service providers based in Russia and Ukraine, and the
Instagram accounts were accessed primarily from IP addresses
located in Ukraine. (Id. ¶ 46.) Plaintiff's investigator
purchased a counterfeit product that was advertised on the
Subject Instagram Accounts by communicating with Defendant via
Defendant's email address <mbformens@gmail.com>. (Id. ¶¶ 52-53.)
Defendant requested and received payment for the counterfeit
product through a Paypal account associated with the email
address <miroslav.ilnitskiy@gmail.com>. (Id. ¶ 53.) Defendant

shipped the counterfeit product, which displayed replica Montblanc Marks, to this District. (Id. ¶¶ 54-55.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. JTH Tax, Inc. v. Grabert, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiff's trademark infringement, trademark counterfeiting, and copyright infringement claims in its Complaint (Dkt. 1) against the standards of Federal Rule of Civil Procedure 12(b)(6).

### A. Trademark Infringement Under the Lanham Act

Plaintiff alleges a claim of trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1). The Lanham Act prohibits the use of a colorable imitation of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or to deceive. 15 U.S.C. § 1114(1). For a claim of trademark infringement, a plaintiff must

11

show that: (1) it has a valid trademark; (2) the trademark is protectable; and (3) the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 170 (4th Cir. 2006). To determine the likelihood of confusion, the Fourth Circuit has stated that nine factors should generally be considered:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
> (2) the similarity of the two marks to consumers;
> (3) the similarity of the goods or services that the marks identify;
> (4) the similarity of the facilities used by the markholders;
> (5) the similarity of advertising used by the markholders;
> (6) the defendant's intent;
> (7) actual confusion;
> (8) the quality of the defendant's product; and
> (9) the sophistication of the consuming public.

George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009) (first citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984); and then citing Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463-64 (4th Cir. 1996)). Despite the numerous factors, "[n]ot all of these factors are of equal importance, 'nor are they always relevant in any given case.'" Id. (quoting Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 320 (4th Cir. 1992)). However, when the allegedly infringing mark is nearly an exact imitation of a plaintiff's mark in an apparent attempt to capitalize upon its popularity,

"there is a presumption of a likelihood of confusion." <u>Polo
Fashions, Inc. v. Craftex, Inc.</u>, 816 F.2d 145, 148 (4th Cir.
1987).

Here, Plaintiff has sufficiently pled facts to support a
claim of trademark infringement under 15 U.S.C. § 1114(1).
Plaintiff has established that it has valid trademarks that are
protectable. Plaintiff not only has common law rights in
Montblanc Marks, including word marks and design marks, but
Plaintiff has also registered Montblanc Marks as trademarks,
including with the U.S. Patent and Trademark Office. (Am. Compl.
¶¶ 22, 24-27, Scheds. B-C.) Plaintiff has also established that
Defendant's use of imitation Montblanc Marks is likely to
confuse consumers, in accordance with the aforementioned factors
and considerations. Plaintiff's Montblanc Marks are
distinctively associated with Montblanc Products. (<u>Id.</u> ¶¶ 18-
23.) Defendant used counterfeit marks that replicated Montblanc
Marks for display on <montblancua.com>, the Subject Domain
Names, the Vk.com Webpage, the Subject Instagram Accounts, and
on counterfeit products. (<u>Id.</u> ¶¶ 31-32, 39-40, 42-44, 47-50, 54-
55.) Defendant's operation of <montblancua.com> and the Subject
Domain Names imitated Plaintiff's genuine <montblanc.com>
website in display and function. (<u>Id.</u> ¶¶ 30-32, 38-40, 42-43.)
Therefore, default judgment in accordance with Plaintiff's
trademark infringement claim is appropriate.

## B. Trademark Counterfeiting Under the Lanham Act

Plaintiff alleges a claim of trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114(1). The Lanham Act prohibits the use of a counterfeit of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or to deceive. 15 U.S.C. § 1114(1). For a claim of trademark counterfeiting, a plaintiff must show that: "(1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offering for sale, or distribution of goods, and (4) the use of the counterfeit mark was likely to confuse consumers." Associated Gen. Contractors of Am. v. Stokes, No. 1:11-cv-795 (GBL/TRJ), 2013 WL 1155512, at *3 (E.D. Va. Mar. 19, 2013). Specifically, a counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, Plaintiff has sufficiently pled facts to support a claim of trademark counterfeiting under 15 U.S.C. § 1114(1). Plaintiff has established that Defendant used a counterfeit mark in commerce, as Defendant used replica Montblanc Marks that were nearly identical and essentially indistinguishable from Plaintiff's own Montblanc Marks. (Am. Compl. ¶¶ 31-32, 39-40, 42-44, 47-50, 54-55.) Plaintiff has established that Defendant

14

intentionally and knowingly used the counterfeit marks, as
Defendant deliberately replicated Plaintiff's Montblanc Marks to
gain profit and other benefits of the Montblanc Marks'
reputation. (Id. ¶ 68.) Plaintiff has established that
Defendant's use of replica Montblanc Marks were used in the
connection with the sale, offering for sale, and distribution of
goods, as Defendant used replica Montblanc Marks to promote
counterfeit Montblanc Products for sale through various
electronic means and included replica Montblanc Marks on
actually distributed counterfeit products. (Id. ¶¶ 31-32, 39-40,
42-44, 47-50, 54-55.) And, as previously described, Defendant's
use of replica Montblanc Marks is likely to confuse consumers,
as Plaintiff's Montblanc Marks are distinctively associated with
their Montblanc Products and services, and yet Defendant used
counterfeit marks that replicated Montblanc Marks on counterfeit
products and for display on various electronic mediums that
imitated Plaintiff's online sales operations. (Id. ¶¶ 18-23, 39-
40, 42-44, 47-50, 54-55.) Therefore, default judgment in
accordance with Plaintiff's trademark counterfeiting claim is
appropriate.

### C. Copyright Infringement Under the Copyright Act

Plaintiff alleges a claim of copyright infringement in
violation of the Copyright Act, 17 U.S.C. § 501. The Copyright
Act provides that only a copyright owner has exclusive rights to

its copyrighted works, and anyone who violates the copyright owner's exclusive rights is considered an infringer. 17 U.S.C. §§ 106, 501(a). For a claim of copyright infringement, a plaintiff must show (1) ownership of the allegedly infringed material; and (2) that the alleged infringers violated at least one exclusive right granted to the copyright holders. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

Here, Plaintiff has sufficiently pled facts to support a claim of copyright infringement under 17 U.S.C. § 501. Plaintiff has established that it is the owner of Montblanc Works. (Am. Compl. ¶ 88, Sched. D.) Furthermore, Plaintiff has established that Defendant replicated Montblanc Works and displayed them during his promotion and sale of counterfeit Montblanc Products. (Id. ¶¶ 93-95.) Specifically, Defendant displayed replica Montblanc Works through <montblancua.com>, the Subject Domain Names, the Vk.com Webpage, and the Subject Instagram Accounts. (Id. ¶¶ 31, 39, 44, 49.) Therefore, default judgment in accordance with Plaintiff's copyright infringement claim is appropriate.

IV. <u>REQUESTED RELIEF</u>

Plaintiff seeks four types of relief against Defendant: statutory damages under the Anticounterfeiting Consumer Protection Act, statutory damages under the Copyright Act, prejudgment interest and postjudgment interest for all damages

16

awards, and permanent injunctive relief under the Lanham Act and the Copyright Act.[4] The undersigned considers each of Plaintiff's requests for relief in turn below.

## A. Statutory Damages Under the Anticounterfeiting Consumer Protection Act

Plaintiff seeks statutory damages in the amount of $32,000,000.00 pursuant to the Anticounterfeiting Consumer Protection Act. (Mem. Supp. Default J. at 22-25.) Plaintiff's request for $32,000,000.00 is based on the maximum amount of $2,000,000.00 statutory damages for each of the sixteen trademarks Plaintiff identified in its First Amended Verified Complaint. (Id. at 23.) In a case involving a defendant's use of counterfeit mark, the trademark owner may elect to recover an award of statutory damages. 15 U.S.C. § 1117(c). To reiterate, a counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." Id. § 1127. When a defendant's use of the counterfeit mark was willful, statutory damages must be "not more than $2,000,000 per counterfeit mark per type of goods or

---

4. In the Proposed Order (Dkt. 39-1) attached to Plaintiff's Motion for Default Judgment, Plaintiff also requests that it be awarded attorney's fees and costs associated with pursuing this action. Even when a defendant fails to appear, "the Court is nevertheless obligated to review the [attorney's] fee award request independently for reasonableness." Kennedy v. A Touch of Patience Shared Hous., Inc., 779 F. Supp. 2d 516, 525 (E.D. Va. 2011). Plaintiff has not otherwise addressed its request for attorney's fees and costs in its briefings or submitted an affidavit or declaration detailing its attorney's fees and costs. Therefore, the undersigned has no means to independently review Plaintiff's request, and so any award for attorney's fees or costs would be inappropriate.

services sold, offered for sale, or distributed." Id. §
1117(c)(2). When determining monetary recovery for
counterfeiting, a court "must take into account the need to
deter others engaged in selling counterfeit goods, particularly
those whose marketplace is the internet." Diane Von Furstenberg
Studio v. Snyder, No. 1:06cv1356(JCC), 2007 WL 3143690, at *6
(E.D. Va. Oct. 23, 2007). This Court has previously tended to
award statutory damages for willful counterfeit use in the range
of $100,000.00 to $120,000.00. See Mya Saray, LLC v. Al-Amir,
831 F. Supp. 2d 922, 942 (E.D. Va. 2011) (awarding $120,000.00
in total statutory damages); Diane Von, 2007 WL 3143690, at *6
(awarding $100,000.00 in statutory damages for one counterfeit
mark). However, this Court has also awarded maximum statutory
damages for use of countermark marks when a defendant's
counterfeit use "is sufficiently broad, extensive, blatant, and
willful." Playboy Enters., Inc. v. Asiafocus Int'l, Inc., No.
Civ.A. 97-734-A, 1998 WL 724000, at *9 (E.D. Va. Apr. 10, 1998).

Plaintiff is entitled to statutory damages, as Defendant
willfully used counterfeit Montblanc Marks. First, Defendant
used marks that were nearly identical and essentially
indistinguishable from Plaintiff's own Montblanc Marks. (Am.
Compl. ¶¶ 31-32, 39-40, 42-44, 47-50, 54-55.) Second, Defendant
willfully did so, as his actions were done in bad faith to gain
profit and other benefits of the Montblanc Marks' reputation.

(Id. ¶ 68.) Such a determination of willfulness is further supported by the fact that Defendant replicated Montblanc Marks and displayed them during his promotion and sale of counterfeit Montblanc Products through multiple electronic means in a coordinated effort, including <montblancua.com>, the Subject Domain Names, the Vk.com Webpage, and the Subject Instagram Accounts, as well as physically displaying counterfeit marks on counterfeit products. (Id. ¶¶ 31, 39, 44, 49, 55, 93-95.)

The undersigned determines that an award of $32,000,000.00, the maximum amount of statutory damages under the Anticounterfeiting Consumer Protection Act for the use of sixteen counterfeit marks, is appropriate as statutory damages in this case. Along with being willful, Defendant's counterfeit use of Plaintiff's Montblanc Marks has been broad, extensive, blatant, and in furtherance of a coordinated effort to imitate Plaintiff's business model. Plaintiff identified sixteen Montblanc Marks, which were its trademarks, in its First Amended Verified Complaint. (Id. ¶¶ 24, 26, Scheds. B-C.) Defendant displayed counterfeit versions of those sixteen Montblanc Marks through <montblancua.com>, the Subject Domain Names, the Vk.com Webpage, and the Subject Instagram Accounts, as well as on a counterfeit product. (Id. ¶¶ 31, 39, 43-44, 48-49, 50, 55.) Further development of this case likely would have revealed even more instances of counterfeit use. This maximum amount of

19

statutory damages not only serves serves to repair the harm done
to Plaintiff, but it also serves the goal to dissuade Defendant
and others from partaking in such willful counterfeit use in the
future.

## B. Statutory Damages Under the Copyright Act

Plaintiff seeks maximum statutory damages in the amount of
$150,000.00 for Defendant's willful copyright infringement
pursuant to the Copyright Act. (Mem. Supp. Default J. at 25-26.)
In a case of copyright infringement, the copyright owner may
elect to recover "an award of statutory damages for all
infringements involved in the action" instead of actual damages
and profits. 17 U.S.C. § 504(c)(1). Statutory damages may total
"with respect to any one work ... a sum of not less than $750 or
more than $30,000 as the court considers just." Id. Upon a
finding of willful infringement, the Court "may increase the
award of statutory damages to a sum of not more than $150,000."
Id. § 504(c)(2). It has long been established that for statutory
damages to be "an effective sanction for enforcement of
copyright policy," they must be awarded to "not merely compel[]
restitution of profit and reparation for injury, but also [be]
designed to discourage wrongful conduct." F.W. Woolworth Co. v.
Contemporary Arts, Inc., 344 U.S. 228, 233 (1952).

The undersigned determines that an award of $150,000.00,
the maximum amount of statutory damages for willful infringement

under the Copyright Act, is appropriate as statutory damages in
this case. Defendant's copyright infringement was clearly
willful, as the infringement was made up of deliberate acts in
knowing disregard for Plaintiff's rights. (Am. Compl. ¶ 95.)
Such a determination of willfulness is further supported by the
fact that Defendant replicated Montblanc Works and displayed
them during his promotion and sale of counterfeit Montblanc
Products through multiple electronic means in a coordinated
effort, including <montblancua.com>, the Subject Domain Names,
the Vk.com Webpage, and the Subject Instagram Accounts. (Id. ¶¶
31, 39, 44, 49, 93-95.) A maximum statutory damages award best
serves the goal to both repair Plaintiff's injury, the true
extent of which is unknown, and to discourage future willful
copyright-infringing conduct by Defendant and other potential
infringers.

### C. Prejudgment Interest and Postjudgment Interest

Plaintiff seeks prejudgment interest and postjudgment
interest on all awards of damages. (Mem. Supp. Default J. at
29.) The undersigned considers the request for prejudgment
interest for statutory damages under the Anticounterfeiting
Consumer Protection Act and Copyright Act and the request for
postjudgment interest in turn.

Plaintiff is entitled to recover prejudgment interest for
its statutory damages under the Anticounterfeiting Consumer

Protection Act and the Copyright Act. Neither the Anticounterfeiting Consumer Protection Act nor the Copyright Act contains a provision explicitly entitling a plaintiff to recover prejudgment interest on awards of statutory damages. See 15 U.S.C. § 1117(c); 17 U.S.C. § 504(c). Therefore, an award of prejudgment interest is within the discretion of the Court, as a statute's silence on prejudgment interest does not "indicat[e] a legislative determination that prejudgment interest should not be awarded, ... [it] merely indicates that the question is governed by traditional judge-made principles." City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 194 (1995).

The undersigned finds that awarding Plaintiff prejudgment interest is appropriate in this case to ensure that Plaintiff receives the proper value of its statutory damages. In the absence of a request by a plaintiff for a particular interest rate, this Court has previously applied the prejudgment interest rate in accordance with Virginia's standard judgment interest rate in VA. CODE § 6.2-302. See, e.g., Tattoo Art, Inc., v. TAT Int'l, LLC, 794 F. Supp. 2d 634, 663, 665 (E.D. Va. 2011). The undersigned finds that Virginia's standard judgment interest rate in VA. CODE § 6.2-302 is appropriate in this case for prejudgment interest, and it should be calculated from August 17, 2015, the date that Defendant first infringed Plaintiff's

Montblanc Marks and Montblanc Works through the
<montblancua.com> website.

Plaintiff is entitled to recover postjudgment interest. A
court may allow postjudgment interest "on any money judgment in
a civil case recovered in a district court." 28 U.S.C. §
1961(a). Like with prejudgment interest, the undersigned finds
that entitling Plaintiff to postjudgment interest is appropriate
in this case to ensure that Plaintiff receives the proper value
of the damages awarded against Defendant, regardless as to when
Plaintiff may be able to collect such damages. The postjudgment
interest is to be calculated in accordance with 28 U.S.C. §
1961.

### D. Permanent Injunctive Relief Under the Lanham Act and the Copyright Act

Plaintiff seeks the entry of a permanent injunction
enjoining Defendant from infringing the Montblanc Marks,
infringing the Montblanc Marks, and engaging in any other
activity of unfair competition with Plaintiff. (Prop. Order at
2; Mem. Supp. Default J. at 28.) Plaintiff also seeks a
permanent injunction enjoining any person or entity engaged with
Defendant from facilitating access to domain names, websites,
accounts, and services through which Defendant has unlawfully
used to infringe the Montblanc Marks and the Montblanc Works,
including the domain names, websites, accounts, and services

23

identified in Plaintiff's First Amended Verified Complaint.
(Prop. Order at 2-3; Mem. Supp. Default J. at 28.) Both the
Lanham Act and the Copyright Act provide that a court may grant
injunctions to prevent the infringement of trademarks and
copyrights. 15 U.S.C. § 1116(a); 17 U.S.C. § 502(a). To obtain a
permanent injunction in the Fourth Circuit, a plaintiff must
show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary
> damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between
> the plaintiff and defendant, a remedy in equity is
> warranted; and
> (4) that the public interest would not be disserved by
> a permanent injunction.

Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543
(4th Cir. 2007) (citing eBay Inc. v. MercExchange, L.L.C., 547
U.S. 388, 391 (2006)). This Court has previously granted
injunctions that have restrained individuals from partaking in
certain activities that facilitate a defendant's unlawful
actions. See, e.g., Microsoft Corp. v. Does 1-2, No. 1:16-cv-
00993 (GBL/TCB), 2017 WL 3605317, at *1-2 (E.D. Va. Aug. 22,
2017).

The undersigned determines that a permanent injunction as
requested by Plaintiff is appropriate. All four elements of the
Fourth Circuit test for a permanent injunction are satisfied.
First, Plaintiff suffered and continues to suffer irreparable

injury as Defendant has infringed its trademarks and copyrighted works through extensive and coordinated use of electronic means to imitate Plaintiff's business structure, creating a likelihood of confusion. Moreover, in the context of trademark infringement, "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 938 (4th Cir. 1995) (citation omitted). With regards to copyright infringement, "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." Christopher Phelps, 492 F.3d at 544. Therefore, the undersigned's aforementioned determination that Defendant infringed Plaintiff's Montblanc Marks and Montblanc Works further supports a finding of irreparable injury.

Second, other remedies available at law are inadequate to compensate Plaintiff. Despite repeated attempts to communicate with Defendant and get Defendant to participate in this lawsuit, Defendant has failed to respond. The lack of an appropriate response from Defendant shows a threat of continued infringement and counterfeiting, as well as a likely lack of cooperation by Defendant with any remedy short of a permanent injunction. Defendant's failure to participate in this lawsuit also supports Plaintiff's request that those who have engaged with Defendant

be enjoined from facilitating access to domain names, websites, accounts, and services that Defendant has unlawfully used in his infringing and counterfeiting activities.

Third, the only hardship that would befall Defendant by granting Plaintiff's requested permanent injunction would be the requirement to follow clearly established trademark and copyright law. Therefore, the balance of hardships weighs in Plaintiff's favor, as Defendant would face barely any hardship at all.

Fourth and finally, public interest favors an injunction. An injunction would prevent the public from being confused by Defendant's trademark and copyright infringement. An injunction would also prevent the public from being misled by Defendant's counterfeiting activities. Furthermore, an injunction would maintain the integrity of Plaintiff's well-known Montblanc Marks and Montblanc Works.

For the aforementioned reasons, the undersigned finds that Plaintiff's requested permanent injunction is the best means to prevent Defendant from future infringement and counterfeiting. Therefore, Plaintiff's requested injunction should be granted.

## V. RECOMMENDATION

For the reasons outlined above, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED. Default judgment should be entered against

Defendant in favor of Plaintiff. Specifically, the undersigned recommends that:

- Plaintiff should be entitled to recover $32,000,000.00 in statutory damages from Defendant pursuant to the Anticounterfeiting Consumer Protection Act;

- Plaintiff should be entitled to recover $150,000.00 in statutory damages from Defendant pursuant to the Copyright Act;

- Plaintiff should be entitled to recover prejudgment interest calculated in accordance with VA. CODE § 6.2-302 and to accrue beginning on August 17, 2015, for the aforementioned statutory damages awards;

- Plaintiff should be entitled to recover postjudgment interest in accordance with 28 U.S.C. § 1961 for the aforementioned statutory damages awards; and

- Plaintiff should receive a permanent injunction enjoining Defendant from further violating Plaintiff's rights to its trademarks and copyrighted works and enjoining those in active concert or participation from facilitating Plaintiff's unlawful actions, as set forth on pages 2-3 of the Proposed Order (Dkt. 39-1) attached to Plaintiff's Motion for Default Judgment.

## VI. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to Defendant at the following email addresses:

- D3E945ACD31C42A6AE7DF8E473373696.PROTECT@WHOISGUARD.COM;
- 6DFD302ECD1847379064C04D05E367F4.PROTECT@WHOISGUARD.COM;
- 8D3666AD1EC94874AB9774C8D586CAD4.PROTECT@WHOISGUARD.COM;
- mbformens@gmail.com;
- miroslav.ilnitskiy@gmail.com;
- ilnitskiy.miroslav@gmail.com;
- miroshandmade@gmail.com; and
- ilyas@ukr.net.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

January 25, 2018
Alexandria, Virginia

28